STERRETT

*v.*

THE NATIONAL SAFE DEPOSIT, SAVINGS AND TRUST CO.

ORPHANS' COURT; PRACTICE; DECEDENT'S ESTATES, PARTIAL DISTRIBUTION OF; STIPULATIONS; ADMINISTRATORS.

1. Where upon an appeal by the propounders of a will, after the finding of a jury adverse to them, from an order of the Orphans' Court refusing probate of the will, after administration granted, a stipulation is entered into between the next of kin and the executor named in the will and one of the two beneficiaries thereunder (the other having abandoned the appeal), providing that a *supersedeas* bond theretofore given should be withdrawn and another bond for a less sum substituted which should be held to operate as a *supersedeas* only as to one-half of the personal estate of the decedent, and that a partial distribution of the balance of the estate, less a certain sum to be reserved for expenses, should be made, the pendency of the appeal and the *supersedeas* bond will not operate to suspend the exercise of the jurisdiction of the Orphans'.Court over the fund until the appeal is finally disposed of.

2. In such a case, the fact that during the trial of the issues in the circuit court, one of the next of kin, who afterwards entered

into the stipulation, testified that according to his information and belief the decedent left a valid will although the same could not be found upon diligent search, will not have the effect of staying the distribution of the fund or preventing its partial distribution under such stipulation.

3. It is the policy of the law that distribution of a decedent's estate should be made at the earliest possible moment that it can be made consistently with the rights of creditors and the safety of the administrator.

4. In such a case, upon such a partial distribution it would be proper for the administrator for his protection to require the parties receiving distribution to execute their personal releases for the amounts paid over to them, or to execute powers of attorney authorizing the execution of such releases.

No. 639. Submitted January 22, 1897. Decided February 9, 1897.

HEARING on an appeal from an order of the Orphans' Court refusing to direct a partial distribution of the estate of a decedent under a stipulation among the next of kin. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. J. M. Wilson* and *Mr. A. S. Worthington* for the appellants.

*Messrs. R. Ross Perry & Son* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appeal in this case is from an order of one of the justices of the Supreme Court of this District, holding a special term for Orphans' Court business, refusing to direct distribution to be made of a certain portion of the personal estate of the late Joseph Holt, deceased, to and among his next of kin, and who are conceded to be entitled to distribution, upon the assumption that the deceased died intestate.

It is conceded that there are no debts remaining unsatisfied, and that the estate is ready for distribution, and that the time has long since elapsed within which distribution should have been made, but for the pendency of a certain litigation in regard to a paper propounded as a last will

and testament of the deceased, which has been denied probate, but which is involved in a pending appeal to this court.

The facts of the case are in no material respects disputed. Indeed, they are virtually agreed, and we shall adopt substantially the statement of facts contained in the briefs of counsel.

It appears that Joseph Holt died in the city of Washington, District of Columbia, on the first day of August, 1894, leaving a large estate, real and personal. His next of kin were the children of two deceased brothers and of a deceased sister. On their application, on the 28th day of September, 1894, and after the usual publication made in such cases, the appellee, the National Safe Deposit, Savings and Trust Company, was appointed administrator of the estate. Nearly a year afterwards there came by mail to the Register of Wills a paper purporting to be the last will and testament of Joseph Holt, by which one-half of the estate was given to "Lizzie Hynes," and the other half to Josephine Holt Throckmorton. Luke Devlin was named in the instrument as the executor. Application being made on behalf of the persons named in the instrument to have it admitted to probate, the usual order of publication was again made. The next of kin filed a caveat to the alleged will, and issues were made up and tried, and the jury found that the alleged will was never executed by Joseph Holt, and final judgment was entered accordingly, in the Probate Court, denying probate of the paper. From this final judgment Elizabeth Hynes, Josephine Holt Throckmorton and Luke Devlin appealed to this court. This appeal was taken when the final judgment was entered, that is, on July 10, 1896. On the 3d of August following, however, Elizabeth Hynes, who gave no appeal bond, formally withdrew and abandoned the appeal so far as she was concerned.

On October 1, 1896, all the next of kin, except Washington D. Holt, filed a petition asking the court to require the

administrator to file an account, and to distribute according
to the laws in force in this District, governing the rights of
next of kin, the one-half of the personal estate of the dece-
dent, which by the pretended will was bequeathed to Eliza-
beth Hynes, reserving such reasonable sum as might be
sufficient to meet the possible claim of Luke Devlin to com-
missions and other expenses. The petition shows that,
besides abandoning her appeal, Elizabeth Hynes · had
conveyed to the next of kin of the decedent the interest,
if any, which she had in his personal estate. Upon filing
this petition a rule was issued on Elizabeth Hynes, Jose-
phine Holt Throckmorton, Luke Devlin, the administrator,
and Washington D. Holt to show cause why the relief
prayed for should not be granted. Service of the rule was
duly made upon all the parties in interest. And, thereupon,
there was filed in the case a stipulation signed by the attor-
neys for all the next of kin, including Washington D. Holt,
and by the attorneys for Josephine Holt Throckmorton and
Luke Devlin, the terms of which were that the penalty of
the *supersedeas* bond, which had been given by Josephine
Holt Throckmorton, might be reduced from $5,000 to $500;
and that the relief asked for by the petition of the next of
kin might be granted, with the provision that .$10,000
should be reserved from the one-half of the estate which
had been claimed by Elizabeth Hynes to meet her propor-
tion of certain claims in case the alleged will should be
finally sustained. Elizabeth Hynes made no response to
the rule to show cause, and allowed the matter to be taken
by default, so far as she was concerned.

The administrator, in its answer to the rule, expressed its
willingness to do all in its power to further a prompt settle-
ment of the estate, but it alleged that it was advised by
counsel that it was doubtful whether, on account of the pen-
dency of the *supersedeas* bond, the court had jurisdiction to
grant the prayers of the petitioners. It further averred that
Washington D. Holt testified under oath, in the trial of the

before-mentioned caveat, that according to his information and belief, Joseph Holt left a valid will and testament, although the same had not been found after diligent search therefor. It further averred that it is advised by counsel that in the event of the finding of a valid last will and testament executed by Joseph Holt, bequeathing property otherwise than according to the distribution made by law of an intestate's estate, it would be held responsible for the payments not made by it in the regular course of administration.

The stipulation filed provides that it shall be operative only in case the court shall make a final order directing a distribution of said one-half of the personal estate (less the $10,000 to be retained), to the next of kin of the deceased, to be embodied in the order approving the substituted bond.

There is no objection interposed to the passage of the order for distribution as prayed by any of the parties really or possibly interested, except by the administrator, the Deposit and Trust Company. On the contrary, all the other parties have expressly agreed that such distribution may be made.

1. The first objection suggested by the administrator is, that the appeal is still pending and that a *supersedeas* bond has been given, the operation of which is to suspend the further exercise of jurisdiction of the Probate Court over the fund until the appeal is finally disposed of. But we think there is nothing in this objection. The parties who have taken the appeal can certainly control it; they may abandon it, or dismiss it, at their own pleasure. *Latham's and Deming's Appeals,* 9 Wall. 145. And so they may settle by agreement with the appellees, and dismiss the appeal. *Platt v. Jerome,* 19 How. 384. And as to the appeal bond, so far as that was intended to operate as a *supersedeas,* it is but an incident of the appeal, intended as an indemnity to the appellees, and that indemnity may be waived altogether by those for whose benefit it was designed, or it may be agreed

between the parties that the bond may be released, so far as the right of indemnity is concerned. The parties taking the appeal were not bound to give a *supersedeas* bond as a condition to the right of appeal; and they were not bound to prosecute the appeal for an interest larger than they claim in the subject-matter. Therefore, it was entirely competent for them to enter into the stipulation that has been filed, whereby it is agreed "that the original bond for $5,000 shall be withdrawn and canceled and a bond for $500 substituted, and that such substituted bond shall be held to operate as a *supersedeas* only as to the one-half of the personal estate of said Joseph Holt, which in and by the paper in controversy in this case, dated February 7, 1873, purporting to be the last will and testament of said Joseph Holt, is bequeathed to said Josephine Holt Throckmorton." By carrying into effect this stipulation, the one-half of the personal estate, less the $10,000 retained, will be left entirely and completely subject to the jurisdiction and direction of the Probate Court, unaffected by the appeal taken to this court.

2. It is further objected by the administrator, that Washington D. Holt, one of the next of kin, though he joins in the stipulation and asks for distribution to be made, testified as a witness on the trial of the caveat to the alleged will, that according to his information and belief Joseph Holt, deceased, left a valid will, though the same could not be found, upon diligent search therefor. He does not appear to have stated what his information was, or upon what his belief was founded. The administrator, however, now suggests that if perchance such will were to be found, the administrator might be made liable for the assets that had been in its hands, though distributed to the next of kin.

This objection can certainly not avail to stay or delay the distribution of the fund. If delay were founded upon such suggestion, it would be indefinite, and it would be difficult to say when distribution could be made. It is the merest surmise, without any substantial foundation of fact upon

which to rest. The court could not authorize the administrator to withhold distribution upon any such suggestion. After what has occurred in respect to this estate, all reasonable presumption is rebutted that there is any will or testament of the deceased that could be produced, if the paper that had been in contest is not such will and testament.

3. The next objection urged to making distribution is one of a more substantial nature; and that is, that the proposed distribution is only partial, and to be made before the final determination of the litigation in regard to the paper propounded as the last will and testament of the deceased, though that paper, after contest, has been denied admission to probate. Whether this objection has any validity in it depends upon the reasonable construction of a few sections of the Testamentary Act of Maryland of 1798, Ch. 101, which is in force in this District.

By section 1 of Subch. 15 of that act, defining the jurisdiction of the Orphans' Court, it is declared that the jurisdiction of that tribunal shall extend to the "taking the probate of wills, granting letters testamentary and of administration, *directing the conduct and settling the accounts of executors and administrators*, securing the rights of legatees, *superintending the distribution of the estates of intestates*, securing the rights of orphans and legatees, *and administering justice in all matters relative to the affairs of deceased persons according to law.*"

This jurisdiction is now exercised by the Supreme Court of the District of Columbia when holding special terms for the transaction of Orphans' Court business.

Then by section 10 of Subch. 10 of the same act, it is provided, that "Whenever it shall appear by the first or other account of an administrator, *that all the debts of, or claims against, the estate,* known by or notified to him, have been discharged or allowed for in his account, *it shall be his duty to deliver up and distribute the surplus or residue of the estate,* as hereinafter directed, provided that his power and duty, with respect to future assets, shall not cease; and after

such delivery, the administrator shall not be answerable for any debt afterwards notified to him, provided he shall have advertised as hereinbefore directed, unless assets shall afterwards come into his hands which shall be liable for such debts."

As will be observed, it is not the full and complete administration of the estate that marks the period for distribution but the payment of or allowance for all debts and claims made known against the estate, after notice given; and when that is done, it at once becomes the duty of the administrator to deliver up and distribute the residue of the estate to those entitled thereto. In this case it is conceded that there are no debts to be paid, and that the entire personal estate has long since been distributable, and ready for distribution, but for the pending litigation in regard to the rejected paper propounded as the last will and testament of the deceased. But with respect to the one-half of the personal estate, less the $10,000 to be retained, all difficulties have been removed by the stipulation of the parties, and there is no provision of the statute that in any manner forbids distribution to be made in accordance with the stipulation. On the contrary, both law and justice would seem to require that distribution should be made of that part of the estate without further delay. It is the plain policy of the law that distribution should be made at the earliest possible moment that it can be made, consistently with the rights of creditors and the safety of the administrator. Parties should not be kept out of the enjoyment of their rights longer than is actually necessary for the ends of justice and the protection of those who administer the estate. The whole testamentary system is deeply imbued with the enlarged and liberal principles of the civil law and of equity, and there should be no such strict and literal interpretation applied as will defeat the main purposes of the system—that is, the promotion of justice within the bounds of reason. That the policy of the statute is to promote early distribu-

tion, is made manifest by the provision of section 7 of Subch. 10, whereby the Orphans' Court is authorized to direct a partial distribution to those entitled and in need, *even before the debts are paid*, when it is satisfactorily shown that there is no reason to apprehend that the assets in hand will be nearly exhausted in the payment of debts. If in such case partial distribution may be made, why not in this, where there are no creditors to be prejudiced, and all parties concerned have stipulated that it may be done. This case is very much stronger in its circumstances requiring distribution to be made, than were the circumstances in the case of *McLane* v. *Cropper*, 5 App. D. C. 276, where the court held, that during the pendency of a writ of error to the Supreme Court of the United States from an order admitting a will to probate, without *supersedeas* bond, there was jurisdiction in the Supreme Court of the District, holding a special term for Orphans' Court business, under the act of 1798, to order such partial distribution of the estate as would preserve the rights of all parties interested, whether the will should be sustained or invalidated on the writ of error. In that case the distribution was opposed by all parties in interest, except the party petitioning for distribution.

It is clear beyond doubt that an order approving the substituted appeal bond, and directing distribution in accordance with the prayer of the petition therefor and the stipulation of the parties, will afford ample protection of the administrator for the money or funds so paid out. If, however, the administrator should deem it necessary for its protection that the parties receiving distribution under such order should execute their personal releases for the amounts paid over to them, or should execute powers of attorney authorizing the execution of such releases, it will be the right of the administrator to exact such releases upon payment of the distributions; and such releases may be filed in the office of the Register of Wills, to be preserved with the stipulation under which the distribution may be made.

We shall reverse so much of the order of the court below of the 6th of November, 1896, as refused to direct distribution to be made in accordance with the prayers therefor and the stipulation of the parties; and the cause will be remanded, to the end that such distribution may be directed and proceedings had in accordance with this opinion; the costs of this appeal to be paid out of the fund for distribution; and it is so ordered.

*Order reversed and cause remanded.*