■ GERALD JACOBSON, Respondent, v DORIS L. SASSOWER, Appellant. — Order of the Appellate Term, First Department, entered November 29, 1983 (122 Misc 2d 863), affirming a judgment of the Civil Court of the City of New York, Small Claims Part, New York County (David B. Saxe, J.), entered April, 1982 (113 Misc 2d 279), in favor of the claimant, Gerald Jacobson, is affirmed, without costs.

While we agree that the judgment of the Civil Court, Small Claims Part, should be affirmed, we do so for the reason that this "nonrefundable" retainer agreement is ambiguous, as found by the Trial Judge, and therefore, under settled principles such ambiguity must be construed against the party drafting the agreement.

Whether enforcement of such a retainer should be denied as unconscionable or as having a chilling effect on a client's right to freely discharge his attorney should depend on a "full exploration of all the facts and circumstances [of the particular case], including the intent of the parties and whether the fee demanded is out of proportion to the value of the attorney's services". (*Gross v Russo,* 47 AD2d 655.) Such retainers, while not to be encouraged, are not, in all cases, unenforceable as a matter of law. Concur — Carro, Bloom, Fein and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would reverse and dismiss.

Appellant is a well-known and qualified matrimonial lawyer. Respondent client had a preliminary consultation with the attorney, for which he paid $100. Four days later, the client executed a retainer agreement and paid, pursuant to that agreement, a "nonrefundable" retainer fee of $2,500. This fee was to be applied to the first 25 hours of the attorney's services at a rate of $100 per hour. A little over one month after the agreement was executed, the client discharged the attorney and engaged substitute counsel. The client then sought a refund of the $2,500 fee he had paid pursuant to the retainer agreement. The Civil Court (Saxe, J.) held that the attorney had performed a maximum of 10 hours on this case, and, based upon the agreed hourly rate and the principle of *quantum meruit,* the client was entitled to a refund of $1,500. (*Jacobson v Sassower,* 113 Misc 2d 279, 286, affd *Per Curiam* 122 Misc 2d 863.)

The type of "nonrefundable" retainer agreement found in this agreement is common to the matrimonial bar. The clause states,

in pertinent part: "2. I hereby agree to a non-refundable retainer of $2,500 (which is not to be affected by any possible reconciliation between myself and my wife). Said retainer is to be credited against your charges (receipt of $2,500 being hereby acknowledged)."

The majority finds this clause to be ambiguous because it does not provide explicit language designating the $2,500 as a "minimum fee" and further affirms that the fee was advance payment for future services. I disagree.

This fee, paid when the agreement was signed, was intended to remunerate counsel for her reputation, for a commitment to this specific client, for her reservation of future time and the possible self-denial of her right to obligate herself to other clients.

The nature of a retainer fee can better be understood when analogized to a "requirements contract". Here, the attorney was promising to supply all the specific services which the client may have needed during a certain period at an agreed price, and the client was implicitly promising that he would obtain his required services from that attorney only. (See *Shader Contrs. v United States,* 276 F2d 1, 4.) Like a requirements contract, the attorney here is put in a position where she must, on demand, supply the needs of her client. She must protect her client's potential needs by making sure that she is available to serve her client and forebear taking on conflicting clients. The attorney has, in a real sense, committed herself to more than the mere performance of future services.

The fact that this agreement contained a "nonrefundable" retainer clause should not, absent unconscionability, render the agreement per se invalid. This type of clause is violative neither of public policy nor the Code of Professional Responsibility. In fact, this specific issue and agreement were addressed by our court in a grievance proceeding initiated by respondent against appellant.

The court held that: "in the absence of shocking or clearly unjustifiable circumstances demonstrating overreaching, we do not find the *per se* use of this clause, apparently in widespread use * * * is the proper basis for a disciplinary proceeding. See *Gross v. Russo,* 47 A.D.2d 655." (*Matter of Sassower,* June 24, 1981 [*Per Curiam*].)

Since the record shows that the terms of this "nonrefundable" retainer clause are not unconscionable, violative of public policy or the Code of Professional Responsibility, or excessive in today's legal marketplace, the only question remaining is whether the contract was bargained for at arm's length.

The basic rule on attorney-client contracts is that " 'an attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client' " (*Greene v Greene,* 56 NY2d 86, 92, quoting *Whitehead v Kennedy,* 69 NY 462, 466).

The client here was a businessman who, the record shows, had previously dealt with contracts. The client had a preliminary consultation with the attorney, he read the agreement, he signed it, and he paid the $2,500 fee established in the agreement. Based on these facts, the agreement should be upheld and the "nonrefundable" retainer fee should be just that — nonrefundable.